IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00541-MJW

COCONA, INC., a Delaware corporation,

    Plaintiff,

v.

SHEEX, INC., a Delaware corporation,

    Defendant.

---

**PLAINTIFF COCONA, INC.'S RESPONSE IN OPPOSITION TO DEFENDANT SHEEX, INC.'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

---

Plaintiff Cocona, Inc. ("Cocona"), by and through its undersigned counsel, respectfully submits this Response in Opposition to Defendant SHEEX, Inc.'s ("SHEEX") Motion to Dismiss for Lack of Subject Matter Jurisdiction (the "Motion").

## I. INTRODUCTION AND BACKGROUND.

On November 12, 2014, SHEEX filed a lawsuit against Cocona in Delaware accusing Cocona of infringing the claims of U.S. Patent No. 8,402,580 (the "'580 Patent") and U.S. Patent No. 8,566,982 (the "'982 Patent") (together the "Asserted Patents").[1]  At the same time it filed its lawsuit, SHEEX issued a press release accusing Cocona of infringing the Asserted Patents. SHEEX did not serve its Complaint on Cocona.  Rather than respond to Cocona's attempts to communicate, SHEEX remained silent for nearly four months, ultimately dismissing without

---

[1] *SHEEX, Inc. v. Cocona Inc.*, Case No. 14-1398-LPS, D. Del. (the "Delaware Lawsuit").

4846-7159-2995.7

prejudice its claims with less than a week remaining before its deadline to serve Cocona pursuant to Fed. R. Civ. P. 4(m).

With no assurances from SHEEX that it did not intend to re-file its patent infringement claims against Cocona and with no way to predict which of its actions, if any, SHEEX believed infringed its patent claims, Cocona had no other choice than to file the present action for declaratory relief.  Despite having created more than a reasonable apprehension of suit by filing—but not prosecuting—claims for patent infringement, SHEEX seeks to prevent Cocona from determining the scope of SHEEX's patent rights by unilaterally proffering a narrowly-tailored and confusing covenant not to sue.  As worded, SHEEX's covenant does not adequately address Cocona's technology, business activities, or its relationship with its customers and partners.  Absent such tailored specificity, Cocona remains under threat of infringement of SHEEX's patent portfolio and therefore a sufficient case or controversy exists to deny SHEEX's Motion to Dismiss.

**II.     STATEMENT OF FACTS.**

Cocona is a technology provider.  Its patented 37.5® technology is, at its core, a process for embedding active particles into fibers in such a way that yarns spun from the fibers have improved performance characteristics in such areas as capturing and releasing moisture vapors.  Licensees of Cocona's 37.5® technology are authorized to purchase from Cocona's partner mills yarns, fabrics, or finished goods made from fibers that incorporate Cocona's embedded active particle technology.  To the extent Cocona's licensees purchase yarns or fabrics, those materials are then woven or knit by the licensee into finished goods at the licensee's own manufacturing facilities.

2

Cocona works closely with its licensees throughout the process of creating a finished good. Cocona provides its licensees with product quality guidelines targeted at ensuring that any finished good includes a sufficient amount of fibers that incorporate the 37.5® technology to achieve maximum performance benefits. Cocona also provides its licensees with testing data and testing methodologies related to the 37.5® technology as incorporated into the specific finished goods. Once Cocona has performed quality control measures and is satisfied that its licensee has manufactured a finished product that properly incorporates the 37.5® technology, Cocona assists the licensee with its marketing and sales efforts, including advertising and promoting the products. As part of this marketing push, Cocona requires the licensees to prominently display Cocona's trademark-protected 37.5® logo on the finished goods.

### III.  ARGUMENT.

#### A.  SHEEX Improperly Discloses—And Improperly Purports To Rely Upon—Representations That Cocona Never Made In Conjunction With The Declaration Submitted by SHEEX.

In the declaration it submitted in support of its Motion to Dismiss, SHEEX expressly bases its covenant on representations from Cocona. (*See* Motion to Dismiss at p. 2) ("Cocona has represented to Sheex that it does not and has not made, had made, offered to sell, or sold performance sheets. Based on this representation…"). Troublingly, the statements that SHEEX attributes to Cocona are excerpted from a *draft version* of a *confidential settlement document* that SHEEX and Cocona exchanged *pursuant to FRE 408*. Worse, SHEEX, not Cocona, drafted the precise language that SHEEX attributes to Cocona in the declaration. Most troubling of all, at the time SHEEX unilaterally submitted its covenant not to sue, the parties remained at an impasse in their discussions and neither side had approved any portion of the draft document. SHEEX did not request, and Cocona certainly did not provide, authorization for SHEEX to

3

include characterizations of Cocona's confidential settlement communications in SHEEX's publicly-filed Motion to Dismiss. Even if Cocona had provided such approval, the statement that SHEEX attributes to Cocona contorts Cocona's position as expressed to SHEEX and includes language that Cocona had *expressly removed* during the parties' confidential negotiations.[2]

SHEEX fails in the Motion to Dismiss to offer this Court any justification for its unilateral decision to include language excerpted from a confidential draft document being negotiated under the auspices of FRE 408. At an absolute minimum, any covenant not to sue tendered by SHEEX must not be predicated on SHEEX's unsupported characterizations of Cocona's views or positions. In addition to being wholly inappropriate, such purported reliance by SHEEX renders the covenant all but illusory. In the event that Cocona objects to SHEEX's characterizations of its prior conduct—which Cocona does—then, as drafted, SHEEX may in the future simply disclaim the covenant as no longer being binding.

### B. SHEEX's Covenant Is Not Tailored To Protect Cocona's Role As A Technology Provider.

In patent cases, the purpose of a declaratory judgment is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights when the opposing party does not sue. *Sony Electronics, Inc. v. Guardian Media Technologies, Ltd.*, 497 F.3d 1271, 1284-1285 (Fed. Cir. 2007). The Federal Circuit has held that "[w]hether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009). The covenant not to sue tendered by SHEEX as part of the Motion to Dismiss is expressly limited to

---

[2] To the extent that SHEEX disputes that it has improperly disclosed language excerpted directly from draft confidential settlement negotiations, Cocona is prepared to submit copies of the parties' communications for the Court's *in camera* review.

4

"*products* currently advertised, manufactured, marketed, used, offered for sale, imported, or sold *by Cocona* or any *products* that were advertised, manufactured, marketed, used, offered for sale, imported or sold *by Cocona* prior to the effective date of this covenant." (Motion to Dismiss at p. 2) (emphasis added.)  SHEEX confirms that the covenant is limited solely to products made or sold by Cocona in the Motion to Dismiss: "Sheex's Covenant provides that as of April 28, 2015, the effective date of the Covenant, Sheex will not bring claims of infringement against Cocona under either of the Patents-in-Suit *on the basis of Cocona's current or past products*." (Motion at p. 3) (emphasis added.)

As discussed *infra*, Cocona does not make or sell *products*.  Rather, Cocona licenses *technology*, including a patented process that can be used to create fibers with embedded active particles.  Mills licensed by Cocona to practice Cocona's patented technology—not Cocona itself—make and sell the fiber, yarn, and membranes that are created through Cocona's patented process.  Further, Cocona does not make or sell *any* finished good created from yarn woven or knit from fiber that incorporates Cocona's 37.5® technology.  Thus, a covenant not to sue that only prohibits SHEEX from asserting claims of infringement against Cocona products offers Cocona absolutely no protection.

Cocona's concern that SHEEX's purported covenant not to sue is limited to "Cocona products" is not merely academic.  In the Complaint filed by SHEEX in Delaware, SHEEX expressly identified "Sleep 37.5 Sheets"—a product advertised as incorporating "37.5 active particle technology"—as infringing its patents claims.  (Delaware Lawsuit, First Amended Complaint at ¶ 7 (Dkt. #5).)  Although Cocona licensed the manufacturer of the Sleep 37.5 sheets to use Cocona's "37.5®" trademark, Cocona neither made nor sold the Sleep 37.5 sheets.

5

Accordingly, the covenant not to sue tendered by SHEEX fails to unambiguously prohibit SHEEX from suing Cocona again based on the Sleep 37.5 sheets or any similar third-party product. At a minimum, a covenant not to sue must cover products made and sold by third parties that *incorporate Cocona's 37.5® technology*, not merely products made or sold by Cocona. SHEEX has demonstrated its willingness to file lawsuits and to assert patent infringement theories aimed at products that are made from fibers that are embedded with active particle technology. Absent a covenant that expressly covers all third-party products that use Cocona's technology, Cocona will have no way of continuing its current business activities without fear of an imminent lawsuit.

**C. SHEEX's Covenant Is Not Tailored To Protect Cocona's Current Business Activities.**

In addition to being limited improperly to products made and sold by Cocona rather than products that incorporate Cocona's proprietary 37.5® technology, the covenant not to sue also fails to cover Cocona's current and ongoing business activities. In contrast to *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995), on which SHEEX relies heavily in its Motion to Dismiss, Cocona is engaged in "present activity" that may infringe on SHEEX's patent rights. In *Super Sack*, the court found that no jurisdiction existed as plaintiff, Chase, was engaged in no "present activity" that placed it at risk of an infringement suit and Chase did not claim it was planning to make any new infringing product. Accordingly, the court found "[t]he residual possibility of a future infringement suit based on Chase's future acts [was] simply too speculative a basis for jurisdiction…" *Id.* at 1060.

In contrast, here, Cocona is engaged in a variety of actions related to the production and promotion of potentially infringing products that constitute "present activity" that was not

6

present in the *Super Sack* case.  At a minimum, these actions constitute "meaningful preparatory steps" sufficient to justify declaratory judgment jurisdiction.  *Id.* at 1059 (*citing Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988)) ("Plaintiff must be engaged in an actual making, selling or using activity subject to an infringement charge or must have made meaningful preparation for such activity."); *see also Sunshine Kids Juvenile Products, LLC v, Indiana Mills & Manufacturing, Inc.*, No. C10–5697BHS, 2011 WL 862038, at *4  (W.D. Wash. Mar. 9, 2011) (attached hereto as **Exhibit 1**). (finding "unlike Chase [in *Super Sack*], Sunshine's activity is not so speculative that it necessarily divests the Court of jurisdiction over a declaratory judgment action involving such activity.").

As discussed *infra*, Cocona continues to provide its licensees with guidelines related to finished goods, including bedding products, made from yarns that incorporate the 37.5® active particle technology and performs quality control measures.  Further, Cocona continues to take meaningful steps to allow its licensees to use the 37.5® logo in conjunction with bedding products that incorporate the 37.5® technology.  Finally, Cocona continues to take meaningful steps to promote the performance benefits of bedding products that incorporate Cocona's proprietary technology.  Each of these current business activities arguably may constitute an act of indirect infringement based on, among other things, SHEEX's prior infringement filings.  Further, Cocona's current activities relate to both bedding products that are commercially available and those that are not.  However, SHEEX's covenant not to sue expressly excludes "products manufactured, sold or used by Cocona that are not commercially available as of this date." (Motion at p. 2.)  Therefore SHEEX's covenant in no way prevents SHEEX from asserting indirect infringement claims against Cocona as it did in the Delaware Lawsuit related to products

7

Cocona is currently taking meaningful preparatory steps to develop and promote but are not yet commercially available.

To protect Cocona adequately and to eliminate any case or controversy, a covenant not to sue must extend to *all* of Cocona's business activities, including those related to products that incorporate Cocona's 37.5® technology—regardless of whether such products are currently commercially available. SHEEX cannot be allowed to prevent Cocona from clarifying whether its present conduct infringes any of SHEEX's patent claims by unilaterally filing a narrow covenant not to sue with the Court that does not adequately address Cocona's infringement concerns.

### D.     SHEEX's Covenant Does Not Extend To Cocona's Partners and Customers.

Even if it wanted to, SHEEX cannot cure the deficiencies in its covenant not to sue simply by changing a few words and shifting the focus from Cocona products to products that incorporate Cocona's 37.5® technology. Cocona has a reasonable apprehension that its licensees and partners will also face lawsuits as a result of using fibers that incorporate Cocona's patented 37.5® technology to make and sell performance bedding products. Courts recognize that when a defendant's conduct, expressed or implied, creates the fear that customers face an infringement suit or the threat of one, the controversy is sufficiently immediate and real. *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc*., 846 F.2d 731, 736 (Fed. Cir. 1988) (*citing Grafon Corp. v. Hausermann*, 602 F.2d 781, 783–784 (7th Cir.1979) (holding that "[p]laintiff's belief in the imminence of a real or threatened infringement suit need not be the product of an express charge by the defendant of patent infringement; an implied charge, or a course of conduct on the part of the defendant which would cause a reasonable man to fear that he or his

8

customers face an infringement suit or the threat of one is sufficient")).  Moreover, the Federal Circuit has previously viewed the sufficiency of a covenant not to sue in terms of its protection of not only the plaintiff but also the plaintiff's affiliates, suppliers, and downstream customers. *Janssen Pharmaceutica, N.V. v. Apotex*, *Inc*., 540 F.3d 1353, 1359 (Fed. Cir. 2008).[3]  In similar circumstances, courts have cited *Ecolochem* and *Apotex* in support of finding declaratory judgment jurisdiction existed when a limited covenant not to sue was offered that excluded plaintiff's customers or suppliers from threat of litigation for infringement.  *See Sunshine Kids*, 2011 WL 862038 at *4-5.

Nothing in the covenant proffered by SHEEX prohibits SHEEX from asserting claims of patent infringement against any licensee of Cocona's technology.  Cocona has a number of past and present customers and partners that manufacture performance bedding products from fibers that incorporate Cocona's proprietary technology.  Regardless of how it is interpreted, SHEEX's covenant not to sue does not extend to any party other than Cocona.

### E.   The Covenant Does Not Cover Pending Related Patents.

Lastly, as part of its strategic effort to make the covenant not to sue as narrow as possible, SHEEX states that "this covenant does not include any other patents that SHEEX currently owns, may hereafter acquire, or *that may issue in the future*."  (Motion to Dismiss at p. 2) (emphasis added.)  At present, Cocona is aware of at least two pending patent applications that relate to the Asserted Patents and that, if issued, would claim inventions substantially similar to those disclosed in the Asserted Patents.  (*See* USPTO Application Nos. 13/272,977 and

---

[3] In contrast to the cited Federal Circuit case, *Apotex,* in which the covenant not to sue expressly gave the plaintiff protection from suit for "manufacture [and/or] having manufactured" the claimed product and states the defendant would "not sue or otherwise seek to hold Apotex's customers and distributors liable...." (540 F.3d at 1363), the covenant from SHEEX includes no such language.  In contrast, it leaves Cocona's suppliers, affiliates, and direct and downstream customers wide open to suits of infringement.

9

13/842,365.)  SHEEX's express *exclusion* of these pending patent applications from the scope of the covenant not to sue effectively nullifies any protections granted by the covenant.  It also reinforces the ambiguity present throughout the covenant and Cocona's inability to rely on the covenant and continue its business activities without threat of suit.

At a minimum, a covenant not to sue must extend to *all* related patents, including future patents in the same family.  Any ambiguity related to this issue in the covenant not to sue must be resolved with clear and unambiguous language that Cocona is protected from suit from both the Asserted Patents and any future related patents.  SHEEX cannot be allowed to avoid the current lawsuit over Cocona's objection by granting Cocona a narrower protection than Cocona would gain if it were to prevail at trial.

### IV.   CONCLUSION.

SHEEX has already sued Cocona once for patent infringement.  Rather than serve its Complaint and prosecute its claims in a timely manner, SHEEX dismissed them without prejudice after first allowing them to languish for nearly four months.  Faced with the prospect of doing business under a cloud of infringement, Cocona chose to exercise its right to seek declaratory relief.  In a transparent effort to avoid defending its actions in a forum that it did not choose, SHEEX has unilaterally proffered an artificially narrow "covenant not to sue" that fails to address Cocona's business model or activities, to protect Cocona's partners or customers, or to extend to future related patents.  In light of these undisputed facts, a case or controversy exists that is more than sufficient to give rise to subject matter jurisdiction.  For the foregoing reasons, Cocona respectfully requests that the Motion be denied.

Respectfully submitted this 21st day of May, 2015.

    KUTAK ROCK LLP

    *s/ Chad T. Nitta*
    Chad T. Nitta
    Blair E. Kanis
    1801 California St., Suite 3000
    Denver, CO 80202
    Tel:  303-297-2400
    Fax:  303-292-7799
    chad.nitta@kutakrock.com
    blair.kanis@kutakrock.com

    *ATTORNEYS FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of May, 2015, I electronically filed the foregoing **PLAINTIFF COCONA, INC.'S RESPONSE IN OPPOSITION TO DEFENDANT SHEEX, INC.'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Karen I. Boyd
Esha Bandyopadhyay
TURNER BOYD LLP
702 Marshall St., Suite 640
Redwood City, CA 94063
Tel:  650-521-5930
boyd@turnerboyd.com
bandy@turnerboyd.com
*Attorneys for Defendant*

*s/ Chad T. Nitta*
Chad T. Nitta
KUTAK ROCK LLP
1801 California St., Suite 3000
Denver, CO 80202
Tel:  303-297-2400
Fax:  303-292-7799
chad.nitta@kutakrock.com

12