**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 15-cv-0541-WJM-MJW

COCONA, INC., a Delaware corporation,

      Plaintiff,

v.

SHEEX, INC., a Delaware corporation,

      Defendant.

---

## ORDER GRANTING MOTION TO DISMISS

---

Plaintiff Cocona, Inc. ("Cocona") sues Defendant Sheex, Inc. ("Sheex") for declaratory judgment that Cocona does not infringe certain of Sheex's patents, and that those patents are invalid. (ECF No. 1.) Based on Sheex's covenant not to sue Cocona for infringement of those patents, Sheex moves to dismiss this action for lack of subject matter jurisdiction. (ECF No. 9.) The Court finds that the covenant not to sue eliminates the "case of actual controversy" required by the Declaratory Judgment Act, 28 U.S.C. § 2201(a), and consequently eliminates subject matter jurisdiction. Sheex's motion is therefore granted.

## I. LEGAL STANDARD

A motion under Rule 12(b)(1) is a request upon the court to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A plaintiff bears the burden of establishing that the court has jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). Dismissal of a complaint under Rule 12(b)(1) is proper

when the Court lacks subject matter jurisdiction over a claim for relief.  *See SBM Site Servs., LLC v. Garrett*, 2012 WL 628619, at *1 (D. Colo. Feb. 27, 2012).

When a court's subject matter jurisdiction is challenged, the court may review materials outside the pleadings without converting the Rule 12(b)(1) motion to dismiss into a motion for summary judgment.  *Davis ex rel. Davis v. United States*, 342 F.3d 1282, 1296 (10th Cir. 2003) (stating that "when a party challenges the allegations supporting subject-matter jurisdiction, the 'court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts'" (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)); *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000); *Holt*, 46 F.3d at 1003.

Only where the jurisdictional question is intertwined with the merits (not present here) is conversion of a Rule 12(b)(1) motion into a motion for summary judgment under Rule 56 appropriate.  *Id.*; WJM Revised Practice Standards III.D.3.

## II.  FACTUAL & PROCEDURAL BACKGROUND

### A.    Cocona and Sheex

Both Cocona and Sheex are in the business of "performance bedding," *i.e.*, bed sheets and similar textiles that incorporate capabilities such as moisture-wicking and breathability.  (ECF No. 1 ¶ 11; ECF No. 12 at 2–3.)  Sheex possesses at least two patents in this field.  *See* United States Patent No. 8,402,580; United States Patent No. 8,566,982.  Cocona, for its part, claims "patented 37.5$^®$ technology," which "is, at its core, a process for embedding active particles into fibers in such a way that yarns spun from the fibers have improved performance characteristics in such areas as capturing

and releasing moisture vapors." (ECF No. 12 at 2.)

The record does not specify whether Sheex manufactures bedding or only

licenses its innovations to manufacturers. Cocona, however, is only a licensor:

> Licensees of Cocona's 37.5® technology are authorized to
> purchase from Cocona's partner mills yarns, fabrics, or
> finished goods made from fibers that incorporate Cocona's
> embedded active particle technology. To the extent
> Cocona's licensees purchase yarns or fabrics, those
> materials are then woven or knit by the licensee into finished
> goods at the licensee's own manufacturing facilities.

(*Id*.) Cocona further claims that it

> works closely with its licensees throughout the process of
> creating a finished good. Cocona provides its licensees with
> product quality guidelines targeted at ensuring that any
> finished good includes a sufficient amount of fibers that
> incorporate the 37.5® technology to achieve maximum
> performance benefits. Cocona also provides its licensees
> with testing data and testing methodologies related to the
> 37.5® technology as incorporated into the specific finished
> goods. Once Cocona has performed quality control
> measures and is satisfied that its licensee has manufactured
> a finished product that properly incorporates the 37.5®
> technology, Cocona assists the licensee with its marketing
> and sales efforts, including advertising and promoting the
> products. As part of this marketing push, Cocona requires
> the licensees to prominently display Cocona's trademark-
> protected 37.5® logo on the finished goods.

(*Id*. at 3.)

## B.     The Delaware Lawsuit

In November 2014, Sheex sued Cocona for patent infringement in the United

States District Court for the District of Delaware. *See Sheex, Inc. v. Cocona Inc.*, Case

No. 1:14-cv-01398-LPS-CJB (D. Del., filed Nov. 12, 2014). (*See also* ECF Nos. 1-1,

1-6.) Sheex then issued a press release accusing Cocona of infringement at least with

regard to "Sleep 37.5 Sheets," which Sheex attributed to Cocona.  (ECF No. 1-5.)

Sheex never served its complaint on Cocona, although Cocona learned about it

anyway.  (ECF No. 1 ¶¶ 28–29.)  Indeed, it appears that the parties' principals had at

least informal settlement discussions.  (ECF Nos. 20-1, 20-2, 20-3.)  In March 2015, for

unexplained reasons, Sheex voluntarily dismissed the Delaware lawsuit without

prejudice.  (ECF No. 1-4 at 3; ECF No. 1-7.)

## C.    This Lawsuit and the Covenant Not to Sue

"With no assurances from Sheex that it did not intend to re-file its patent

infringement claims," Cocona chose to file this action for declaratory judgment.  (ECF

No. 12 at 2.)  Cocona seeks a declaration that it does not infringe Sheex's patents, and

that those patents are otherwise invalid.  (ECF No. 1 ¶¶ 44–59.)

A little over a month after Cocona filed this lawsuit, Sheex transmitted a

"covenant not to sue" to Cocona, which the Court will refer to as the "Covenant."  It

reads in full as follows:

> THIS COVENANT NOT TO SUE is made as of April 28,
> 2015 by Sheex, Inc. ("Sheex"), the owner of U.S. Patent
> Nos. 8,402,580 ("the '580 Patent") and 8,566,982 ("the '982
> Patent").  Cocona, Inc. ("Cocona") has sued Sheex in the
> United States District Court for the District of Colorado, Case
> No. 1:15-cv-541-MJW, for declaratory judgment of
> noninfringement and invalidity of the '580 and '982 patents.
> Pursuant to *Super Sack Mfg. Corp. v. Chase Packaging
> Corp.*, 57 F.3d 1054, 1058 (Fed. Cir. 1995), Sheex makes
> the following covenant not to sue for the purpose of
> resolving all issues in this litigation.  Cocona has
> represented to Sheex that it does not and has not made,
> had made, offered to sell, or sold performance sheets.
> Based on this representation, Sheex unconditionally and
> irrevocably covenants not to assert any claim of direct or
> indirect patent infringement against Cocona under the '580
> Patent and the '982 Patent, including continuations, with

4

> respect to any products currently advertised, manufactured, marketed, used, offered for sale, imported, or sold by Cocona, or any products that were advertised, manufactured, marketed, used, offered for sale, imported or sold by Cocona prior to the effective date of this covenant. This covenant does not extend to products manufactured, sold, or used by Cocona that are not commercially available as of this date.  It does not include any modified versions of currently available Cocona products that are substantially different than the current versions of these products.  In addition, this covenant does not include any other patents that Sheex currently owns, may hereafter acquire, or that may issue in the future.

(ECF No. 9-2.)  This Covenant was signed by Sheex's president.  (*Id.*)

Sheex now moves to dismiss this lawsuit for lack of subject matter jurisdiction, arguing that the Covenant eliminates the case or controversy necessary to sustain such jurisdiction.  (ECF No. 9.)

## III.  ANALYSIS

### A.    General Effect of Covenants Not to Sue on Declaratory Judgment Actions

"In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ."  28 U.S.C. § 2201(a). "[T]he phrase 'case of actual controversy' . . . refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III [of the U.S. Constitution]." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007).

Twenty years ago, the Federal Circuit's *Super Sack* decision (cited in the Covenant) endorsed a method by which a declaratory judgment defendant could eliminate the "case of actual controversy."  In a motion to dismiss similar to the one at

issue here, the party facing a declaratory judgment counterclaim (Super Sack) stated that it would "unconditionally agree not to sue Chase [the counterclaimant] for infringement as to any claim of the patents-in-suit based upon the products currently manufactured and sold by Chase." *Super Sack*, 57 F.3d at 1056.  The district court granted the motion and the Federal Circuit affirmed:

> Super Sack is forever estopped by its counsel's statement
> . . . from asserting liability against Chase in connection with
> any products that Chase made, sold, or used on or before
> [the date of Super Sack's motion to dismiss].  This estoppel,
> in turn, removes from the field any controversy sufficiently
> actual to confer jurisdiction over this case.

*Id*. at 1059.

The Federal Circuit reaffirmed *Super Sack* a few years later in *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852 (Fed. Cir. 1999).  There,

> Amana sued Quadlux . . . seeking . . . declaratory judgments
> of patent invalidity and noninfringement . . . .  In response,
> Quadlux filed a . . . declaration by its president and chief
> executive officer . . . covenanting not to "assert any claim of
> patent infringement against Amana under [the relevant
> patent] as it presently reads, with respect to any product
> currently advertised, manufactured, marketed or sold by
> Amana, or any product which was advertised, manufactured,
> marketed or sold by Amana prior to the date of this
> declaration."

*Id*. at 855.  Given this, the Federal Circuit reasoned, "it is clear that no controversy survives the Quadlux covenant," and the court therefore affirmed the district court's dismissal of the case for lack of subject matter jurisdiction.  *Id*. at 855–56.

*Super Sack* and *Amana* both applied the Federal Circuit's then-existing test for declaratory judgment jurisdiction in patent actions, which required the declaratory

judgment plaintiff to show "a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit." *Id*. at 855 (internal quotation marks omitted); *see also Super Sack*, 57 F.3d at 1058. The Supreme Court's *MedImmune* decision in 2007 rejected the "reasonable apprehension of suit" test as too narrow. *MedImmune*, 549 U.S. at 132 & n.11; *see also SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007) (discussing effect of *MedImmune* on Federal Circuit jurisprudence). Nonetheless, "the holdings in both [*Super Sack* and *Amana*] are not necessarily dependent on the 'reasonable apprehension of imminent suit' requirement." *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1346 (Fed. Cir. 2007). Thus, post-*MedImmune*, the Federal Circuit has continued to apply *Super Sack*, *Amana*, and similar pre-*MedImmune* decisions affirming dismissal of declaratory judgment actions where the defendant covenants not to sue the plaintiff based on the patents in question. *See, e.g.*, *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1347–48 (Fed. Cir. 2010); *Janssen Pharmaceutica, N.V. v. Apotex, Inc.*, 540 F.3d 1353, 1363 (Fed. Cir. 2008); *Benitec*, 495 F.3d at 1347–48.

Under this authority, Sheex's Covenant would appear to deprive this Court of subject matter jurisdiction. Cocona, however, offers four counterarguments, which the Court will address in turn.

## B.    Cocona's Alleged Representations to Sheex

First, Cocona takes issue with the following phrase from the Covenant: "Cocona has represented to Sheex that it does not and has not made, had made, offered to sell, or sold performance sheets. *Based on this representation*, Sheex unconditionally and

irrevocably covenants . . . ."  (ECF No. 9-2 (emphasis added).)  Cocona claims that its alleged representation to Sheex came from a draft version of a confidential settlement document exchanged under Federal Rule of Evidence 408.  (ECF No. 12 at 3.)  Cocona therefore argues that the Covenant is somehow inadmissible.  But Sheex did not submit the Covenant "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408(a).  Sheex is simply reporting the terms of its Covenant.  The Court therefore finds Rule 408 inapplicable.

Cocona continues, however, that Sheex's reliance on its own characterization of Cocona's position "renders the covenant all but illusory.  In the event that Cocona objects to SHEEX's characterizations of its prior conduct—which Cocona does—then, as drafted, SHEEX may in the future simply disclaim the covenant as no longer being binding."  (ECF No. 12 at 4.)  It appears, in other words, that Cocona now claims it did not make the representation on which Sheex based the Covenant, or at least that it was not prepared to have any party rely on whatever representation it did make.  Cocona therefore fears that Sheex has left itself an escape route, so to speak, given that it explicitly entered into the Covenant "[b]ased on" a potential misunderstanding that arguably goes to the core of the Covenant.  *Cf.* Restatement (Second) of Contracts § 153 (1981) (discussing voidability of agreements based on mistake).

This raises an interesting concern, but Sheex's reply essentially moots it.  Faced with Cocona's disavowal of its representations to Sheex, Sheex does *not* retract the Covenant, but presses forward, insisting that the Covenant accurately summarizes the parties' previous communications.  (ECF No. 20 at 6–7.)  In other words, Sheex is now

8

fully aware that it may have misunderstood Cocona's intentions but Sheex has nonetheless elected to continue under the Covenant, relying on its own understanding of Cocona's intentions while knowing that its understanding may be mistaken. Sheex has therefore assumed that risk and cannot void or renounce the Covenant on those grounds. *See, e.g.*, Restatement (Second) of Contracts § 153 ("Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154 . . . ."); *id.* § 154 ("A party bears the risk of a mistake when * * * (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so."). Accordingly, the parties' dispute over Cocona's alleged representations does not perpetuate "a case of actual controversy." 28 U.S.C. § 2201(a).

## C.    Cocona's Role as a Licensor

Cocona next points out that the Covenant applies to "products currently advertised, manufactured, marketed, used, offered for sale, imported, or sold by Cocona, or any products that were advertised, manufactured, marketed, used, offered for sale, imported or sold by Cocona prior to the effective date of this covenant," but that Cocona "does not make or sell products. Rather, Cocona licenses technology . . . . Thus, a covenant not to sue that only prohibits SHEEX from asserting claims of infringement against Cocona products offers Cocona absolutely no protection." (ECF

9

No. 12 at 5 (emphasis removed).) "At a minimum," Cocona continues, "a covenant not to sue must cover products made and sold by third parties that incorporate Cocona's 37.5® technology . . . ." (*Id.* at 6 (emphasis removed).)

As Sheex points out, however, the Covenant specifically applies to "indirect patent infringement." (ECF No. 20 at 2.) The Patent Act (title 35 of the United States Code) does not use the term "indirect infringement," but it is nonetheless a well understood and "commonplace" reference to "the acts set forth in [35 U.S.C. §§] 271(b) and 271(c), inducing or contributing to direct infringement by other persons." 5-17 *Chisum on Patents* § 17.01. The Covenant therefore prevents Sheex from suing Cocona based products made and sold by Cocona's licensees. Accordingly, this argument does not sustain subject matter jurisdiction.

**D.     Applicability to Customers**

Although the Covenant protects Cocona from liability based on licensees' actions, the Covenant does not protect the licensees themselves. Cocona argues that the possibility of lawsuits against licensees is enough to preserve the controversy necessary for Article III jurisdiction. (ECF No. 12 at 8–9.) Sheex contends that potential controversies against other parties cannot sustain an actual controversy among these parties. (ECF No. 20 at 4–6.)

The Federal Circuit has not spoken with one voice on this scenario. Both Cocona and Sheex have cited decisions favoring their respective positions, which the Court will analyze in turn.

1.   Decisions Favoring Cocona

In *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731 (Fed. Cir. 1988), the plaintiff and defendant competed in the sphere of water treatment technology, and particularly in methods for "deoxygenation." *Id.* at 733.   At one point, the defendant communicated with one of the plaintiff's customers, claiming that the plaintiff's deoxygenation services violated the defendant's patent and that the customer might itself be liable for patent infringement if it continued to use the plaintiff's services. *Id.*   The plaintiff then sued the defendant, seeking a declaratory judgment of invalidity and noninfringement. *Id.* at 733.   The district court dismissed, however, finding that there was no reasonable prospect of an imminent infringement lawsuit by the defendant against the plaintiff. *Id.* at 733–34.

The Federal Circuit reversed.   Among other authorities, the court relied on a pre-Federal Circuit patent case from the Seventh Circuit "requiring an apprehension that plaintiff or its '*customers* face an infringement suit or *threat* of one.'" *Id.* at 736 (quoting *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979)) (emphasis in original).   The Federal Circuit also noted a lawsuit by the defendant against another deoxygenation competitor, which demonstrated the defendant's "willingness and capacity to employ litigation in pursuit of its patent rights." *Id.* at 737.   In that light, the court found it "difficult, if not impossible, to imagine how a prudent . . . executive confronted with the totality of [the defendant's] conduct could resist the onset of a most reasonable apprehension that [the plaintiff] is next [to be sued]." *Id.*   The court concluded that the circumstances, as a whole, sufficed to create the controversy

necessary to sustain a declaratory judgment action.  *Id.* at 738.

Sheex points out that the *Arrowhead* decision ultimately turned on the plaintiff's fear of eventually being sued itself, not simply on threats to the plaintiff's customers. (ECF No. 20 at 4.)  That distinction does not apply, however, to a much more recent Federal Circuit decision on which Cocona relies, *Janssen Pharmaceutica, N.V. v. Apotex, Inc.*, 540 F.3d 1353 (Fed. Cir. 2008).  In *Janssen*, the plaintiff sued the defendant for patent infringement, and the defendant counterclaimed on various grounds, including declaratory judgment of invalidity and noninfringement of certain patents that the plaintiff was *not* asserting.  *Id*. at 1358.  The plaintiff provided the defendant with a covenant not to sue regarding the unasserted patents and then filed a motion to dismiss the related counterclaims for lack of subject matter jurisdiction.  *Id*. at 1358–59.  The district court granted that motion.  *Id*.

Similar to Cocona's position here, the defendant in *Janssen* argued on appeal that the covenant not to sue was "deficient as it does not protect [the defendant's] affiliates, suppliers, and downstream customers."  *Id*. at 1363.  The Federal Circuit disagreed, pointing out language in the relevant covenant stating that the plaintiff "would not sue or otherwise seek to hold [the defendant's] customers or distributors liable based on the importation, distribution, use, sale and/or offering for sale of the [disputed products]."  *Id*. (internal quotation marks omitted).  "Therefore," the court concluded, "we hold [that the plaintiff's] covenant-not-to-sue is not deficient, as it protects [the defendant's] affiliates, suppliers and downstream customers."  *Id*.

Sheex claims that *Janssen* turned on the fear "that [the defendant's] customers might be exposed to liability had they used or sold the [defendant's] allegedly infringing product." (ECF No. 20 at 5 (emphasis removed).)  Sheex contrasts that with Cocona's situation—"Cocona does not make or sell an infringing product"—and claims that "[t]he apprehension that one's customer might be sued on the basis of an infringing product that one has made and sold to the customer differs greatly from Cocona's fear that its customers might utilize Cocona's technology to subsequently produce an infringing product." (*Id.* at 5–6.)

The Court is not persuaded that this is a meaningful distinction, or one supported by *Janssen* itself.  Whether or not Cocona makes the entire (allegedly) patented item or only an indispensable component, its business would probably be equally affected if all of its customers or licensees faced infringement suits from Sheex.

Nonetheless, *Janssen* does not unequivocally establish that threat to one's customers or licensees can be enough to sustain a declaratory judgment action. *Janssen* simply does not address that question from a legal perspective.  Rather, *Janssen* seems to have disposed of the defendant's argument by pointing out that the factual basis for the defendant's challenge was wrong—*i.e.*, that, contrary to the defendant's claim, the covenant not to sue really *did* cover the defendant's customers. The court therefore did not need to decide, as a matter of law, whether a covenant not to sue without such protection is deficient.  Thus, *Janssen* provides only an indirect basis for the notion that a case or controversy subsists despite the Covenant at issue here.

2.    <u>Decisions Favoring Sheex</u>

The cases Sheex cites in its favor are similarly indirect.  For example, in *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338 (Fed. Cir. 2010), Dow Jones (the declaratory judgment plaintiff) argued that the covenant not to sue at issue there would "not extinguish the parties' controversy regarding the [relevant] patent because it does not include Dow Jones' 'affiliates', *viz.*, Dow Jones' parent company, News Corporation, as well as any of News Corporation's subsidiaries, divisions, or other affiliates which are not expressly included in the covenant."  *Id.* at 1348 (internal quotation marks omitted). The Federal Circuit rejected this argument because "Dow Jones fail[ed] to provide a precise definition of what it means by 'affiliates,'" and as for News Corporation, "it is well-settled law that, absent a piercing of the corporate veil (which neither party alleges), a parent company is not liable for the acts of its subsidiary."  *Id.* at 1348–49. Thus, "[b]ecause News Corporation is insulated from liability should Dow Jones be found liable for infringement, Ablaise's infringement suit against Dow Jones cannot be said to constitute a case or controversy involving News Corporation or its divisions and subsidiaries which are legally distinct entities from Dow Jones."  *Id.* at 1349.

As is evident from the quoted language, the Dow Jones decision appears to rest on the relationship between parent and subsidiary corporations.  That is not at issue here, and so the relevance of *Dow Jones* is questionable.

Sheex also cites *Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333 (Fed. Cir. 2001) ("*IPD*").  The defendant in *IPD* asserted counterclaims for declaratory judgment of invalidity and noninfringement, which the

district court dismissed for lack of subject matter jurisdiction given a "Statement of Non

Liability" that the plaintiff filed with the court. *Id*. at 1338. The defendant argued on

appeal "that it could be required to indemnify an entity that potentially could be held

liable in a different case for infringing the [relevant] patent." *Id*. at 1341. The Federal

Circuit found the argument beside the point:

> If [the defendant's] interests are affected by a different suit
> regarding the [relevant] patent, then [the defendant] should
> join that action as a party, for example, pursuant to Federal
> Rule of Civil Procedure 19(a)(2)(i) [now 19(a)(1)(B)[1]].
> Further, part one of the declaratory justiciability test for
> patent rights requires action by the patent owner that creates
> "reasonable apprehension" on the part of the declaratory
> plaintiff that it will face an infringement suit. A suit filed
> against a different party, even if [the defendant] could
> potentially be required to indemnify that party, is not a suit
> that [the defendant] itself faces. Therefore, the district court
> correctly determined that it lacked jurisdiction despite [the
> defendant's] indemnity concerns.

*Id.* at 1341–42 (footnotes omitted).

*IPD*, far more than any of the pre-*MedImmune* cases analyzed above, seems to

rest its holding specifically on the "reasonable apprehension" test rejected in

*MedImmune*. *See* Part III.A, *supra*. To that extent, *IPD* is no longer good law. To the

extent *IPD* has any other holding, it is difficult to discern. The fact that the defendant

could join some other lawsuit only shows that lack of subject matter jurisdiction would

not leave the defendant without a remedy. It does not show that subject matter

jurisdiction is, indeed, lacking. Moreover, in the midst of the paragraph quoted above,

---

[1] Rule 19 governs how existing parties may join non-parties. The Court has never seen
Rule 19 used by a non-party to join itself. Non-parties seeking to participate in an existing
lawsuit usually do so by way of Rule 24 (intervention). *Compare* Fed. R. Civ. P. 19(a)(1)(B)
*with* Fed. R. Civ. P. 24(a)(2).

*IPD* inserted an enigmatic footnote: "We recognize that 'apprehension' also may apply to a declaratory plaintiff's customers as discussed in *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731 (Fed.Cir.1988)." *Id.* at 1341 n.8. It is unclear whether this footnote was meant to distinguish *Arrowhead* (discussed *supra*, Part III.D.1) or to reaffirm it in some way.

In any event, neither *Dow Jones* nor *IPD* provides a clear basis for rejecting Cocona's argument that potential suits against its customers are enough to sustain subject matter jurisdiction.

3.   Resolution

As the foregoing review of authorities demonstrates, the law is somewhat ambiguous in this area. Nonetheless, because "the phrase 'case of actual controversy' [28 U.S.C. § 2201(a)] refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III [of the U.S. Constitution]," *MedImmune*, 549 U.S. at 126, the question ultimately comes down to one of Article III standing. In the Supreme Court's oft-repeated words,

> the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks,

citations, and footnote omitted; alterations incorporated).  As a matter of intuition, it would seem that if successful lawsuits against one's customers would ultimately destroy one's business, then one is likely to establish this "irreducible constitutional minimum" as against the party bringing those lawsuits.

Nonetheless, the Court need not and does not reach any definitive holding on that question because, in this case, it is still "conjectural or hypothetical."  Although Cocona raises the possibility that Sheex might sue Cocona's customers, Cocona provides no evidence that such lawsuits are "actual or imminent."  Given that Sheex filed this motion under Federal Rule of Civil Procedure 12(b)(1), Cocona had every right to submit evidence in response (*e.g.*, declarations), *see* Part I, *supra*, but Cocona submitted nothing, much less anything to raise the specter of lawsuits against its customers.  Cocona simply asserts in conclusory fashion that it "has a reasonable apprehension that its licensees and partners will also face lawsuits as a result of using fibers that incorporate Cocona's patented 37.5$^®$ technology."  (ECF No. 12 at 8.)  That bare statement does not suffice to carry Cocona's obligation to demonstrate subject matter jurisdiction.  *See Brown v. FBI*, 793 F. Supp. 2d 368, 374 (D.D.C. 2011) ("nondescript and conclusory allegations of injury are not the type of general factual allegations from which the Court may presume the specific facts necessary to ensure that the plaintiff has standing" (internal quotation marks omitted)); *cf. Benitec*, 495 F.3d at 1344 ("The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since."); *Sunshine Kids Juvenile Prods., LLC v. Ind. Mills & Mfg., Inc.*, 2011 WL 862038, at *5 (W.D. Wash. Mar. 9, 2011) (holding that a

17

covenant not to sue did not eliminate subject matter jurisdiction where it did not extend to customers or resellers and the complaint specifically alleged that the patent-holder "uses threats, including the threat of litigation, to dissuade companies who would otherwise compete with Indiana in manufacturing car seats and related products").

Thus, Cocona's generalized concern about potential lawsuits against its customers and licensees, without more, is not enough to sustain subject matter jurisdiction.

**E.     Future Products**

Finally, Cocona notes that the Covenant "does not include any other patents that SHEEX currently owns, may hereafter acquire, or that may issue in the future." (ECF No. 12 at 9 (internal quotation marks omitted).) Cocona states that it "is aware of at least two pending patent applications . . . that, if issued, would claim inventions substantially similar to those disclosed in [the patents at issue here]." (*Id.*)

However, "[t]he residual possibility of a future infringement suit based on [a party's] future acts is simply too speculative a basis for jurisdiction . . . ." *Super Sack*, 57 F.3d at 1060; *cf. Amana*, 172 F.3d at 855 ("an actual controversy cannot be based on a fear of litigation over future products"). Thus, Cocona's concerns about Sheex's pending patent applications are not enough to preserve subject matter jurisdiction.

In sum, the Court holds that the Covenant has eliminated the "case of actual controversy," 28 U.S.C. § 2201(a), necessary for subject matter jurisdiction over Cocona's claims for declaratory judgment. This action must therefore be dismissed.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.     Defendant Sheex, Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction

(ECF No. 9) is GRANTED; and

2.     The Clerk shall enter final judgment in accordance with this order and shall

terminate this case.  The parties shall each bear their own attorneys' fees and

costs.

Dated this 12th day of June, 2015.

BY THE COURT:

William J. Martínez
United States District Judge